1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MINNIE MOORE,<br><br>           Plaintiff,<br><br>   v.<br><br>MICHAEL J. ASTRUE, Commissioner<br>of Social Security,<br><br>         Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

1:09-cv-01582 GSA

**ORDER REGARDING PLAINTIFF'S
SOCIAL SECURITY COMPLAINT**

## BACKGROUND

Plaintiff Minnie Moore ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability and supplemental security income benefits pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Gary S. Austin, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. *See* Docs. 8 & 10.

1

## FACTS AND PRIOR PROCEEDINGS[2]

1

Plaintiff applied for disability insurance and supplemental security income benefits in

December 1998.[3]  *See* AR 244-246.  The applications were denied initially and on

reconsideration.  AR 163-172.  Plaintiff requested a hearing before an Administrative Law Judge

("ALJ"), and a hearing was held before ALJ Rocklin D. Lyons on October 12, 2000.  AR 173-

174, 685-710.  ALJ Lyons issued a decision denying benefits on November 21, 2000.  AR 99-

108.

On February 9, 2001, Plaintiff reapplied for disability insurance and supplemental

security income benefits.  AR 251-254.  The applications were again denied initially and on

reconsideration.  AR 176-186.  Following a request for a hearing before an ALJ, on June 26,

2002, ALJ Joanne Birge held a hearing and issued a decision denying benefits on November 13,

2002.  AR 122-133, 187-188, 711-748.  Plaintiff appealed the decision.  AR 201-202.  After

remand by the Appeals Council, on July 28, 2005, ALJ James Ross held a hearing and

subsequently issued a decision denying benefits on November 21, 2005.  AR 52, 140-143, 147-

162, 749-770.  Again, Plaintiff appealed the decision.  AR 215-217.

On July 23, 2007, following remand by the Appeals Council, ALJ James Berry held a

hearing and issued an order regarding benefits.  AR 39, 222-226.  ALJ Berry determined that

Plaintiff became disabled on November 18, 2004, however, because Plaintiff's "date last

insured" was December 31, 2003, she was not entitled to disability insurance benefits.

Nevertheless, ALJ Berry found Plaintiff was entitled to supplemental security income benefits as

of November 18, 2004.  AR 26-39.  The Appeals Council denied review on July 17, 2009.  AR

10-12.  Plaintiff now appeals the finding that she was not disabled prior to November 2004.

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

[3] The record also contains a decision denying benefits dated August 20, 1997, indicating an application for disability insurance benefits was filed as early as November 1995.  AR 70-77.

**2007 Hearing Testimony**

ALJ Berry held a hearing on July 23, 2007, in Fresno, California. Plaintiff was present and testified; she was represented by attorney Charles Oren. Vocational Expert ("VE") Judith Najarian also testified. AR 771-793.

Counsel asked Plaintiff whether she was truthful and honest when she provided previous testimony; she replied affirmatively. When she was asked whether her conditions had improved, worsened or stayed the same, Plaintiff indicated they remained the same. AR 784.

Plaintiff completed the eighth grade, but did not earn a GED. AR 790-791. When asked whether she drives, Plaintiff indicated she does so once in a while. For instance, she drove her son's car to the proceedings. AR 781. She does do her own cooking. AR 784.

Plaintiff sees her cardiologist every three months for her heart condition. The doctor has discussed the possibility of surgery with her "to open another valve." AR 775. In November 2004, Plaintiff underwent heart surgery. AR 787. Plaintiff continues to have pain in the area of her heart. She uses Nitroglycerin about twice a month. AR 776. Exertion or stress causes more pain. AR 776, 785. Plaintiff testified that she began noticing more chest pain in 2003, although she does not recall a particular event that caused her to take notice. AR 777. When specifically questioned by counsel about becoming disabled in 2000, and the fact that Plaintiff complained of chest pain at that time, Plaintiff indicated that she did have chest pain in 2000 and took a single "blood pressure pill" at that time. AR 778. When asked to recall and describe the chest pain "[b]ack in 2000," Plaintiff stated that she believed it was "gas pain," but when she sought treatment at the emergency room, she was advised she was having a heart attack. However, she later agreed that event actually occurred in 2004. AR 778. She has been advised by her cardiologist that she will have "to live with" her condition. AR 784.

Plaintiff experiences chest pain when vacuuming the floor, when she gets depressed, or "something like that." AR 779. In 2004, as a result of the chest pain, Plaintiff would stay home, watch television, "do a little cleaning," and then go for a walk. AR 780.

In 2004, Plaintiff found it necessary to lie down for four to five hours during the day and still finds it necessary to do so. AR 781, 783. When asked how many hours in an eight-hour

1   work day that she could sit, Plaintiff replied "[m]aybe two or three hours."  AR 783-784.  When

2   she was asked by the ALJ how long she could stand in an eight-hour workday, Plaintiff replied

3   about three hours.  AR 787.  She  can walk two blocks before she becomes fatigued and must use

4   an inhaler for shortness of breath.  AR 779.  When asked about difficulties she experiences while

5   standing, Plaintiff indicated that her left leg will "give[] out a lot" as a result of "something to do

6   with the muscles."  AR 780.  The problem is mainly related to Plaintiff's left knee.  AR 782.

7          With regard to side effects of the medications she is currently prescribed, and more

8   particularly the blood pressure medication, Plaintiff indicates she gets tired, has less energy and

9   sleeps more as a result.  AR 777-778.  Plaintiff also has a hard time remembering things, and that

10  too may be a side effect of the medications she has been prescribed, but she is not sure.  AR 783.

11         Plaintiff is currently being treated by Dr. Dao.[4]  AR 780-781.  She also suffers from

12  numbness in her hands and arm which has been a problem for four or five years.  The condition

13  has neither improved nor worsened over time.  AR 782-783.  The hands and arm "stay numb for

14  maybe 20 or 30 minutes . . . at a time."  AR 782.  Nor has her condition improved.  AR 782-783.

15  Plaintiff has undergone three surgeries on her right hand; she believes the last surgery was prior

16  to 2000 at Valley Medical Center.  AR 782.  Plaintiff has a hard time holding items with that

17  hand.  AR 783.  When she was asked how much weight she could currently lift, Plaintiff replied

18  she could lift a five pound bag of sugar with one hand and "help it" with the other.  AR 783, 787.

19         Plaintiff last worked in 2001 providing in home care three days a week, for three or four

20  hours a day.  In 1995, Plaintiff worked at Taco Bell.  AR 785-786.  While employed at Taco Bell

21  she acted as cashier, cook, and cleaner; she "did all of it."  AR 786.  She recalls having to lift a

22  twenty-five pound bag of beans.  AR 786.

23         With regard to Plaintiff's past work, VE Najarian clarified that Plaintiff cleaned the house

24  and took out the garbage during her employment as an in home care provider, and also drove the

25  gentleman to whom she provided care to the Veterans Administration hospital for appointments

26  with his physician.  AR 789.  As a result, VE Najarian indicated the in home care work was as a

27

28          [4]The transcript of the proceedings reads "Dr. Dowell," however a review of the record reveals the
   physician's surname to be Dao.

day worker in the Dictionary of Occupational Titles ("DOT"), medium and 2, unskilled.  AR 789.  With regard to Plaintiff's prior work at Taco Bell, the VE classified it as a fast food worker in the DOT, light and 2, unskilled.  The VE noted however that if Plaintiff were lifting twenty-five pounds, the work was medium as performed.  AR 789-790.  When she was asked again about the heaviest weight lifted during her employment with Taco Bell, Plaintiff indicated she could not "see" how much the large bag weighed; it could have been twenty pounds[5] or it could have been twenty-five pounds.[6]  AR790.

VE Najarian was asked to consider a hypothetical worker between the age of forty-nine to fifty-three years of age, with an eighth grade education and past relevant work as a day worker and fast food worker.  Additionally, the VE was asked to consider the fact the hypothetical worker had a combination of severe impairments and the residual functional capacity ("RFC") to lift and carry twenty pounds occasionally and ten pounds frequently, can stand, walk and sit for six hours each, and can occasionally push or pull.  AR 791.  VE Najarian indicated that such a worker could not perform Plaintiff's past work as a fast food worker where it is performed at a medium level, nor could the individual perform the work of a day worker.  However, the hypothetical worker could perform work as a fast food worker if it is performed at the light level.  AR 791.

Next, VE Najarian was asked to assume a similar hypothetical worker with the ability to sit for four to eight hours, stand or walk for two hours, and lift and carry ten pounds.  In light of those limitations, VE Najarian indicated the hypothetical worker would be unable to perform any of Plaintiff's past relevant work.  AR 791.

---

[5] An item weighing twenty-one pounds would classify the work as medium whereas an item weighing twenty pounds or less would result in a classification of light work.

[6] A review of the record indicates that Plaintiff has previously indicated she lifted fifty pounds or more while employed at Taco Bell.  *See* AR 106 ("she lifted up to 50 pounds in this job"), 275 (Plaintiff checked boxes "50 lbs." and "50 lbs. or more") & 329 (same).

1    **Medical Record**

2         The entire medical record was reviewed by the Court (AR 363-684), however, only those

3    medical records relevant to the issues on appeal will be addressed below as needed in this

4    opinion.

5    **ALJ Berry's Findings**

6         The ALJ determined that Plaintiff met the insured status requirements on December 31,

7    2003, but those requirements were not met thereafter.  AR 33.  Next, the ALJ determined that

8    Plaintiff had not engaged in substantial gainful activity since November 22, 2000, the alleged

9    onset date, and that she had the severe impairments of arthritis, coronary artery disease,

10   hypertension and carpal tunnel syndrome.  AR 34.  Nonetheless, the ALJ determined that, from

11   the alleged onset date, Plaintiff did not have an impairment or combination of impairments that

12   met or exceeded one of the listing impairments.  AR 34.

13        Based on his review of the medical evidence, the ALJ determined that Plaintiff had the

14   RFC to lift and/or carry twenty pounds occasionally and ten pounds frequently, and to sit, stand

15   and/or walk for six hours in an eight-hour work day, with a restriction to occasional pushing and

16   pulling.  AR 34-37.  The ALJ found that, beginning November 18, 2004, Plaintiff had the RFC to

17   perform the full range of sedentary work.  Prior to November 18, 2004, Plaintiff was capable of

18   performing her past relevant work.  AR 37.  However, the ALJ found that as of November 18,

19   2004, Plaintiff's RFC has prevented her from performing her past relevant work.  AR 37.

20        Thereafter, the ALJ determined that, as of November 18, 2004, considering Plaintiff's

21   age, education, work experience and RFC, there were not a significant number of jobs in the

22   national economy that Plaintiff could perform.  AR 38.  Thus, the ALJ determined that Plaintiff

23   was not disabled prior to November 18, 2004, but became disabled on that date and remains

24   disabled through to the present.  AR 38-39.  Accordingly, the ALJ determined that Plaintiff

25   entitled to receive supplemental security income as of November 18, 2004.  Plaintiff was not

26   entitled to disability insurance benefits as the date of disability fell beyond the date Plaintiff was

27   last insured for that purpose.  AR 39.

28

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n.10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c (a)(3)(A).  A claimant must show that she has a physical or mental impairment of such severity that she is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).  The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process.  20

1    C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).  Following the ALJ's determination here (*see*

2    ALJ Berry's Findings, *ante*), Plaintiff argues on appeal that the ALJ (1) erred at step two of his

3    sequential analysis; (2) erred in his finding regarding Plaintiff's past relevant work as a fast foods

4    worker; (3) improperly rejected the opinion of a medical provider; (4) improperly rejected

5    Plaintiff's allegations; (5) proffered a flawed RFC finding; (6) failed to fully develop the record

6    regarding Plaintiff's illiteracy; and (7) improperly determined Plaintiff's disability onset date.

7    (Doc. 16 at 9-28.)

8                                                    **DISCUSSION**

9           ***Step Two Findings***

10          Plaintiff asserts ALJ Berry erred at step two of his sequential analysis when he

11   determined that Plaintiff's borderline intellectual functioning was not a severe impairment, and

12   further, that he failed to consider her combined impairments throughout his sequential analysis.

13   (Doc. 16 at 9-16.)  The Commissioner contends the ALJ properly assessed Plaintiff's alleged

14   mental impairment.  (Doc. 20 at 5-10.)

15          At step two of the sequential evaluation process, the ALJ must conclude whether Plaintiff

16   suffers from a "severe" impairment.  The regulations define a non-severe impairment as one that

17   does not significantly limit the claimant's physical and mental ability to do basic work activities.

18   An impairment is not severe "if the evidence establishes a slight abnormality that has 'no more

19   than a minimal effect on an individual's ability to work.'"  *Smolen v. Chater*, 80 F.3d 1273, 1290

20   (9th Cir. 1996).  To satisfy step two's requirement of a severe impairment, the claimant must

21   prove the existence of a physical or mental impairment by providing medical evidence consisting

22   of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone

23   will not suffice.  20 C.F.R. §§ 404.1508, 416.908.  The effects of all symptoms must be

24   evaluated on the basis of a medically determinable impairment which can be shown to be the

25   cause of the symptoms.  20 C.F.R. §§ 404.1529, 416.929.  An overly stringent application of the

26   severity requirement violates the statute by denying benefits to claimants who do meet the

27   statutory definition of disabled.  *Corrao v. Shalala,* 20 F.3d 943, 949 (9th Cir. 1994).

28

1    The step two inquiry is a *de minimis* screening device to dispose of groundless or

2  frivolous claims.  *Bowen v. Yuckert,* 482 U.S. 137, 153-154 (1987).  Further, the ALJ must

3  consider the combined effect of all of the claimant's impairments on his ability to function,

4  without regard to whether each alone was sufficiently severe.  42 U.S.C. § 423(d)(2)(B).  The

5  combined effect "shall be considered throughout the disability determination process.  *Id*.  The

6  adjudicator's role at step two is further explained by SSR 85-28:

7           A determination that an impairment(s) is not severe requires a careful evaluation of the
           medical findings which describe the impairment(s) and an informed judgment about its
8          (their) limiting effects on the individual's physical and mental ability(ies) to perform basic
           work activities; thus, an assessment of function is inherent in the medical evaluation
9          process itself. At the second step of sequential evaluation, then, medical evidence alone is
           evaluated in order to assess the effects of the impairment(s) on ability to do basic work
10         activities.

11  SSR 85-28.

12    Here, ALJ Berry did not identify borderline intellectual functioning as a severe

13  impairment. AR 34.  With regard to Dr. William A. Spindell's psychological evaluation of

14  August 2002, the ALJ noted the following:

15           In August 2002, consultative psychologist Dr. Spindell examined the
           claimant.  The claimant did not feel that her primary problems were psychological
16         in nature.  She complained of back and legal pain and weakened condition.  The
           claimant reported that she had not seen a psychiatrist or psychologist and
17         primarily was under care for cardiac problems.  On mental status examination,
           obtained scores on the WAIS III were a Verbal IQ of 80, Performance IQ of 73,
18         and a Full Scale IQ of 75.  Dr. Spindell felt the claimant had the requisite
           cognitive skills to employ these in the labor market should her medical conditions
19         permit.  The state agency consultants determined the claimant had no severe
           mental impairment.  She had no sought any psychiatric treatment, and she was
20         still working, driving, and using public transportation.

21  AR 35, internal citations omitted.  It is Plaintiff's burden to prove a severe impairment by

22  providing medical evidence consisting of signs, symptoms, and laboratory findings.  20 C.F.R.

23  §§ 404.1508, 416.908.  A review of the record affirms ALJ Berry's determination that Plaintiff's

24  intellectual functioning did not affect her ability to perform basic work activities.

25    "Basic work activities" include physical functions, such as walking, standing, sitting,

26  lifting, pushing, pulling, reaching, carrying, or handling; as well as mental capacities such as

27  understanding, carrying out, and remembering simple instructions; using judgment; responding

28  appropriately to supervision, co-workers, and usual work situations; and dealing with changes in

9

a routine work setting.  *See* 20 C.F.R. § 404.1521(b).  Dr. Spindell's findings speak directly to

Plaintiff's mental capacities.  In fact, the doctor determined Plaintiff was capable of the

following work capacities: maintaining regular attendance in the workplace, performing work

activities on a consistent basis, performing work activities without special or additional

supervision, completing a normal workday or workweek without interruptions resulting from a

claimant's psychiatric condition; accepting instructions from supervisors; interacting with

coworkers and with the public; and dealing with the usual stresses encountered in competitive

work.  Dr. Spindell identified a single work capacity that Plaintiff could not perform: detailed

and complex tasks.  AR 528.  All that is required of basic work activities is an ability to

understand, carry out, and remember *simple* instructions.  Additionally, Dr. Spindell opined that

Plaintiff had the ability to perform the activities of daily living, maintain social relationships,

sustain concentration, persistence or pace, and function outside highly supportive arrangements.

AR 528.

        As correctly pointed out by the Commissioner, the mere diagnosis of an impairment is not

sufficient to sustain a finding of disability.  *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

 The mere fact Plaintiff has been diagnosed with borderline intellectual functioning is not

sufficient to sustain a finding of disability, and this record clearly supports the ALJ's finding of

no severe impairment.

        To the degree Plaintiff asserts she meets the Listing 12.05C requirements for mental

retardation, she is incorrect.  The Disability Evaluation Under Social Security (Blue Book

September 2008) defines mental retardation as follows:

> Mental retardation refers to significantly subaverage general intellectual
> functioning with deficits in adaptive functioning initially manifested during the
> developmental period; i.e., the evidence demonstrates or supports onset of the
> impairment before age 22.
>         The required level of severity for this disorder is met when the
> requirements in A, B, C, or D are satisfied.
>         A.  Mental incapacity evidenced by dependence upon others for personal
> needs (e.g., toileting, eating, dressing, or bathing) and inability to follow
> directions, such that the use of standardized measures of intellectual functioning is
> precluded;
>         OR
>         B.  A valid verbal, performance, or full scale IQ of 59 or less;
>         OR

C. *A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function*;
OR
D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace;
or
4. Repeated episodes of decompensation, each of extended duration.

*See* http://www.ssa.gov/disability/professionals/bluebook/12.00, emphasis added. Dr. Spindell's evaluation recorded a Verbal IQ of 80, a Performance IQ of 73 and a Full Scale IQ of 75. AR 526, 530. None of Plaintiff's scores fall between 60 and 70. Neither is the Court persuaded to adopt the reasoning in *Shontos v. Barnhart*, 328 F.3d 418, 424 (8th Cir. 2003).

To the degree Plaintiff contends her borderline intellectual functioning is severe and thus would have affected the ALJ's finding at step four, the Court finds unpersuasive her argument that the ALJ should have questioned the VE with regard to the required supervision regarding a fast food worker position. Plaintiff's intellectual functioning was the same in 1995 as it was in 2002. No such inquiry was necessary.

In sum, this record makes it plain that Plaintiff's impairment has "'no more than a minimal effect on [her] ability to work.'" *Smolen v. Chater*, 80 F.3d at 1290. ALJ Berry's finding is supported by substantial evidence and is free of legal error.

### *The ALJ's Finding Regarding Plaintiff's Past Work*

Plaintiff argues the ALJ erred by finding that Plaintiff had past relevant work as a fast foods worker, and that she could return to such work "'as generally performed.'" (Doc. 16 at 16-20.) In reply, the Commissioner contends the ALJ's finding was proper. (Doc. 20 at 10.)

A person is not disabled if they are able to perform their past work. 20 C.F.R. § 404.1502(f). Social Security Ruling ("SSR") 82-61 provides that there are three possible tests for determining whether or not a claimant retains the capacity to perform her past relevant work:[7]

_____

[7] Social Security Rulings are interpretations by the Social Security Administration of the Act. While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law. The Ninth Circuit has upheld the Secretary's interpretation of the Act embodied in SSR 82-40, which makes express what is implicit in SSR 82-61. *Quang Van Han v. Bowen*, 882 F.2d at 1457.

1. Whether the claimant retains the capacity to perform a past relevant job based on a broad generic, occupational classification of that job, e.g., "delivery job," "packaging job," etc. Finding that a claimant has the capacity to do past relevant work on the basis of a generic occupational classification of the work is likely to be fallacious and unsupportable. While "delivery jobs," or "packaging jobs," etc., may have a common characteristic, they often involve quire different functional demands and duties requiring varying abilities and job knowledge.

2. Whether the claimant retains the capacity to perform the particular functional demands and job duties peculiar to an individual job as he or she actually performed it.  Under this test, where the evidence shows that a claimant retains the RFC to perform the functional demands and job duties of a particular past relevant job as he or she actually performed it, the claimant should be found to be "not disabled."

3. Whether the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy. (The *Dictionary of Occupational Titles* (DOT) descriptions can be relied upon -- for jobs that are listed in the DOT -- to define the job as it is *usually* performed in the national economy.) It is understood that some individual jobs may require somewhat more or less exertion than the DOT description.  A former job performed in by the claimant may have involved functional demands and job duties significantly in excess of those generally required for the job by other employers throughout the national economy. Under this test, if the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be "not disabled."

SSR 82-61, emphasis in original.

Plaintiff contends the proper classification for her work performed at Taco Bell is that of a fast foods cook, DOT 313.374-010.  The Court is not persuaded.  Plaintiff herself testified that she "did all of" the work while employed at Taco Bell - she used the cash register, she cooked and she cleaned.  AR 786.  The VE relied upon DOT 311.472-010 and it plainly comports with the testimony Plaintiff gave with regard to how she performed her position at Taco Bell.  Notably too, a review of the record contains reference after reference to Plaintiff's former work at Taco Bell to be properly classified as a "fast foods worker."  *See* AR 94, 101, 106, 123, 152, 275, 286, 286, 329, 337.  There is no error here.

Additionally, the Court notes that Plaintiff's attorney during the administrative proceedings made no effort to question Plaintiff further in this regard.  Rather, counsel only addressed the lifting requirements related to Plaintiff's work at Taco Bell.  Counsel could have asked Plaintiff to further explain what she meant by her testimony that she did "all" of the work in that position.  He did not.  For that reason, the argument has also been waived for purposes of

12

appeal. *See Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999) (holding that "at least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal"); *Marathon Oil Co. v. United States*, 807 F.2d 759, 767 (9th Cir. 1986) (stating that, "[a]s a general rule, we will not consider issues not presented before an administrative proceeding at the appropriate time"); *see also Mills v. Apfel*, 244 F.3d 1, 8 (1st Cir. 2001) (finding waiver due to failure to raise issue at hearing before ALJ, as opposed to the Appeals Council).[8] *Cf. Silveira v. Apfel*, 204 F.3d 1257, 1260 n. 8 (9th Cir. 2000) (considering an issue raised for the first time on appeal "because it is a pure question of law and the Commissioner will not be unfairly prejudiced by [plaintiff's] failure to raise the issue below").

Thus, the ALJ's findings are supported by substantial evidence and are free of legal error.

### The ALJ's Consideration of the Medical Opinion Evidence

Plaintiff argues that the ALJ erroneously rejected the opinion of Dr. Spindell.  More specifically, she asserts the ALJ failed to provide valid reasons for rejecting the expert's opinion. (Doc. 16 at 20-22.)

### 1.    Applicable Legal Standards

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians).  As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant.  *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987).  At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons.  *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).  Even if the treating doctor's opinion is contradicted by another

---

[8] In *Sims v. Apfel*, 530 U.S. 103, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000), the Supreme Court held that a Social Security claimant's failure to present an issue to the Appeals Council does not waive judicial review of that issue but specifically deferred ruling on whether a claimant must exhaust issues before the ALJ prior to seeking judicial review.  *See id.* at 107, 112.  The First Circuit explained in *Mills* that "[t]he impact of a no-waiver approach at the Appeals Council level is relatively mild; at the ALJ level it could cause havoc, severely undermining the administrative process."  *Mills*, 244 F.3d at 8.

1   doctor, the Commissioner may not reject this opinion without providing "specific and legitimate

2   reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722

3   F.2d 499, 502 (9th Cir. 1983).

4          The opinion of an examining physician is, in turn, entitled to greater weight than the

5   opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990);

6   *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984). As is the case with the opinion of a treating

7   physician, the Commissioner must provide "clear and convincing" reasons for rejecting the

8   uncontradicted opinion of an examining physician. *Pitzer*, 908 F.2d at 506. And like the opinion

9   of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor,

10  can only be rejected for specific and legitimate reasons that are supported by substantial evidence

11  in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

12         The opinion of a nonexamining physician cannot, by itself, constitute substantial evidence

13  that justifies the rejection of the opinion of either an examining physician or a treating physician.

14  *Pitzer v. Sullivan*, 908 F.2d at 506 n.4; *Gallant v. Sullivan*, 753 F.2d at 1456. In some cases,

15  however, the ALJ can reject the opinion of a treating or examining physician, based in part on the

16  testimony of a nonexamining medical advisor. *E.g., Magallanes v. Bowen,* 881 F.2d 747, 751-55

17  (9th Cir. 1989); *Andrews v. Shalala*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir.

18  1995). For example, in *Magallanes*, the Ninth Circuit explained that in rejecting the opinion of a

19  treating physician, "the ALJ did not rely on [the nonexamining physician's] testimony alone to

20  reject the opinions of Magallanes's treating physicians . . .." *Magallanes*, 881 F.2d at 752.

21  Rather, there was an abundance of evidence that supported the ALJ's decision: the ALJ also

22  relied on laboratory test results, on contrary reports from examining physicians, and on testimony

23  from the claimant that conflicted with her treating physician's opinion. *Id*. at 751-52.

24         Here, ALJ Berry did not provide specific and legitimate reasons for rejecting Dr.

25  Spindell's opinion because, as the Court finds, he did not reject it. *See* AR 35-36. Dr. Spindell

26  specifically found that Plaintiff possessed the "cognitive skills" to succeed in the labor market,

27  despite her borderline intellectual functioning. *See* AR 526-528. Dr. Spindell noted Plaintiff

28  was articulate, oriented to time, person, place and purpose, made good eye contact and was

cooperative.  She was friendly and put forth great effort, and possessed good remote and recent

memory functions.  Despite the WAIS III IQ test results indicating borderline intelligence

functioning, Dr. Spindell determined Plaintiff was capable of managing her own funds, and more

importantly, that she was capable of all work capacities with the single exception that Plaintiff

was not capable of performing detailed and complex tasks.  AR 526-528.  ALJ Berry

incorporated Dr. Spindell's opinion into his RFC finding wherein he limited Plaintiff to light,

unskilled work with a specific vocational preparation ("SVP") of 2.  AR 789-791.  Pursuant to

the Regulations, unskilled work is work "which needs little or no judgment to do simple duties

that can be learned on the job in a short period of time."  20 C.F.R. § 404.1568(a).

Therefore, ALJ Berry's findings in this regard are supported by substantial evidence and

are free of legal error.

### *Consideration of Plaintiff's Allegations*

Plaintiff contends the ALJ erred by improperly rejecting her allegations of pain.  (Doc. 16

at 22-25.)  The Commissioner asserts the ALJ followed the correct legal standards when

evaluating Plaintiff's credibility.  (Doc. 20 at 10-13.)

### Applicable Legal Standards

A two step analysis applies at the administrative level when considering a claimant's

credibility.  *Smolen v. Chater*, 80 F.3d at 1281.  First, the claimant must produce objective

medical evidence of an impairment that could reasonably be expected to produce some degree of

the symptom or pain alleged.  *Id.* at 1281-1282.  If the claimant satisfies the first step and there is

no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity

of his symptoms only if he makes specific findings that include clear and convincing reasons for

doing so.  *Id.* at 1281.  The ALJ must "state which testimony is not credible and what evidence

suggests the complaints are not credible."  *Mersman v. Halter*, 161 F.Supp.2d 1078, 1086 (N.D.

Cal.2001), quotations & citations omitted ("The lack of specific, clear, and convincing reasons

why Plaintiff's testimony is not credible renders it impossible for [the] Court to determine

whether the ALJ's conclusion is supported by substantial evidence"); SSR 96-7p (ALJ's decision

1   "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the

2   weight the adjudicator gave to the individual's statements and reasons for that weight").

3       An ALJ can consider many factors when assessing the claimant's credibility.  *See Light v.*

4   *Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir.1997).  The ALJ can consider the claimant's

5   reputation for truthfulness, prior inconsistent statements concerning his symptoms, other

6   testimony by the claimant that appears less than candid, unexplained or inadequately explained

7   failure to seek treatment, failure to follow a prescribed course of treatment, claimant's daily

8   activities, claimant's work record, or the observations of treating and examining physicians.

9   *Smolen v. Chater*, 80 F.3d at 1284; *Orn v. Astrue*, 495 F.3d 625, 638 (2007).

10   **ALJ Berry's Relevant Findings**

11       ALJ Berry found as follows with regard to Plaintiff's credibility and symptoms:

12       After considering the evidence of record, I find that the claimant's
medically determinable impairments could reasonably be expected to produce the
alleged symptoms, but that the claimant's statements concerning the intensity,
persistence and limiting effects of these symptoms are not entirely credible prior
to November 18, 2004.

    The claimant has complained of and [has] been treated for carpal tunnel
syndrome.  In May 1999, right wrist x-rays were negative.  In June 1999, an EMG
was consistent with mild carpal tunnel syndrome.  The claimant was given splints
and Ibuprofen.  In March 2005, the claimant wanted an injection.

    In August 2002, consultative psychologist Dr. Spindell examined the
claimant.  The claimant did not feel that her primary problems were psychological
in nature.  She complained of back and leg pain and weakened condition.  The
claimant reported that she had not seen a psychiatrist or psychologist and
primarily was under care for cardiac problems.  On mental status examination,
obtained scores on the WAIS III were a Verbal IQ of 80, Performance IQ of 73,
and a Full Scale IQ of 75.  Dr. Spindell felt the claimant had the requisite
cognitive skills to employ these in the labor market should her medical conditions
permit.  The state agency consultants determined the claimant had no severe
mental impairment.  She had not sought any psychiatric treatment, and she was
still working, driving, and using public transportation.

    The claimant has also complained of chest pain, but prior to November 18,
2004, an exercise tolerance test was negative for angina and ischemia.  There was
exercise-induced ventricular ectopy.  Chest x-rays were negative.

    The claimant has been treated and followed for controlled hypertension
with medications.  She has also been treated for knee and back pain.  In July 2000,
lumbar x-rays showed transitional vertebra, mild degenerative disc disease at L4-
5, and mild anterior compression deformity at T10.

    In February 1999, consultative orthopedist Dr. Benjamin Chang examined
the claimant.  The claimant complained of sharp and constant low back pain for
five years, radiating to the left leg.  She reported that she had stopped working in
1995 due to worsening pain.  On physical examination, the claimant had no
trouble getting on or off the examination table or taking off her shoes.  She was
able to perform finger-to-nose and heel-to-knee examinations.  She walked on her

toes, heels, and in tandem with some difficulty. Romberg was absent. Straight leg raising was positive sitting on the left side at 60 degrees. There was diffuse tenderness in her low back, but there was no paravertebral muscle spasms, crepitus, effusion, or deformities. There was normal muscle bulk and tone with no evidence of muscle weakness and atrophy. Dr. Chang diagnosed chronic low back pain likely from muscle strain.

Overall, the nature, location, onset, duration, frequency, radiation, and intensity of the claimant's alleged impairments prior to November 18, 2004 are not corroborated by the record to the degree alleged. There is no doubt that the claimant has experienced some pain, but certainly not to the degree alleged. The claimant did not receive treatment consistent with a chronic pain syndrome such as biofeedback, acupuncture, use of a TENS unit, or attendance at a pain management clinic.

Prior to November 18, 2004, the claimant described her daily activities which are not limiting to the extent one would expect, given the complaints of disabling symptoms and limitations. The claimant told Dr. Chang in February 1999 that she read, watched television, did light house chores, cooked, washed dishes, cleaned and swept. The claimant reported in March 2001 that she cooked, cleaned, relaxed, took care of her personal needs, did laundry, read, quilted, worked puzzles, watched television, rode the bus, drove a car, and generally went to work. She stated she had no problems getting along with family or friends, and took care of her animals. She reported that she lost a job because she could not move fast enough. The claimant reported in a fatigue questionnaire in March 2001 that she showered, made breakfast, relaxed, cleaned, and napped one to two hours a day. In January 2003, the claimant was moving objects and fell backward and struck her back on a coffee table. A friend of the claimant, Connie Contreraz, reported in March 2001 that the claimant had no problems taking care of personal needs, shopped twice a month, went outside two to three times a day, sometimes drove, used public transportation, watched television for five hour s a day and took care of her animals. The claimant had no problems getting along with friends and family.

There is evidence that the claimant stopped working for reasons not related to the allegedly disabling impairments. The claimant was apparently working three days a week when she filed her application in January 2001. At the previous hearing she testified that she last worked in March 2002 as a home care provider. However, there are no earnings posted on her earnings record for 2002. The claimant told Dr. Spindell in August 2002 that she went on unemployment when her work situation ended, and then filed for disability when her unemployment ran out. The claimant testified earlier that she last worked in 2002 but stopped because she was too slow. She later stated that the person she was taking care of had passed away. However, the claimant's successful accomplishment of in-home care provider duties demonstrated her ability to perform this level of work in the job market.

The record generally suggests that the claimant was seeing physicians primarily in order to generate evidence for this application and appeal, rather than in a genuine attempt to obtain relief from the allegedly disabling symptoms. The claimant was noted to be "seeking disability." The claimant originally alleged depression, fatigue, weakness, and low back pain, but did not allege left leg pain or carpel tunnel syndrome.

AR 35-36, internal citations omitted.

//

//

### Analysis

The first step in assessing Plaintiff's subjective complaints is to determine whether Plaintiff's condition could reasonably be expected to produce the pain or other symptoms alleged. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).  Here, ALJ Berry found that Plaintiff's severe impairments of arthritis, coronary artery disease, hypertension and carpal tunnel syndrome could reasonably be expected to produce the alleged symptoms.  AR 35.  This finding satisfied step one of the credibility analysis.  *Smolen v. Chater*, 80 F.3d at 1281-1282.

Because the ALJ did not find that Plaintiff was malingering, he was required to provide clear and convincing reasons for rejecting Plaintiff's testimony.  *Smolen v. Chater*, 80 F.3d at 1283-1284; *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) (as amended). When there is evidence of an underlying medical impairment, the ALJ may not discredit the claimant's testimony regarding the severity of his symptoms solely because they are unsupported by medical evidence.  *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991); SSR 96-7.  Moreover, it is not sufficient for the ALJ to make general findings; he must state which testimony is not credible and what evidence in the record leads to that conclusion.  *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir.1993); *Bunnell*, 947 F.2d at 345-346.

In this case, the ALJ made numerous credibility findings.  ALJ Berry indicated that in addition to a lack of objective medical evidence, he considered Plaintiff's daily activities as well. An ALJ can look to daily living activities as part of the credibility analysis.  *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).

Additionally, ALJ Berry pointed out a number of discrepancies between the record and Plaintiff's testimony, or prior statements.  An ALJ can consider the claimant's reputation for truthfulness, prior inconsistent statements concerning symptoms, or other testimony by the claimant that appears less than candid.  *Smolen v. Chater*, 80 F.3d at 1284; *Orn v. Astrue*, 495 F.3d at 638.

Moreover, ALJ Berry noted concerns regarding Plaintiff's conservative pain treatment and observations that Plaintiff was seeking medical treatment in an effort to bolster her claim for

benefits.  An ALJ may consider unexplained or inadequately explained failure to seek treatment, failure to follow a prescribed course of treatment, and the observations of treating and examining physicians.  *Smolen v. Chater*, 80 F.3d at 1284; *Orn v. Astrue*, 495 F.3d at 638.  *See also Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (impairments that are effectively controlled with medication are not disabling); *Tidwell v. Apfel*, 161 F.3d 599, 601-602 (9th Cir. 1998) (finding a mild or minor medical condition with all other tests reporting normal provides a basis for rejecting claimant's testimony of severity of symptoms); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (inconsistencies between the record and medical evidence supports a rejection of a claimant's credibility; no medical treatment or a conservative level of medical treatment has been found to suggest a lower level of pain and functional limitations); *Bunnell v. Sullivan*, 947 F.2d at 346-47 (factors to evaluate credibility include medication effectiveness, side effects of medication, and functional restrictions, as well as "ordinary techniques of credibility evaluation"; treatment and lack of treatment are factors used to evaluate credibility); *Fair v. Bowen*, 885 F.2d at 603-04 (claiming severe conditions yet receiving minimal, conservative, or no treatment is a basis to reject claimant's testimony; additionally, failure to follow prescribed treatment can be considered in determining credibility);  20 C.F.R. § 416.929 (objective medical evidence can be used in determining credibility; inconsistencies in evidence will support a rejection of credibility); SSR 96-7p (objective medical evidence is a useful indicator to assist in making a reasonable conclusion about credibility and the ability to function).

Even where an ALJ relies upon one erroneous reason in the credibility analysis, remand is not required.  *See eg., Batson v. Barnhart*, 359 F.3d 1190, 1197 (9th Cir. 2004) (upholding ALJ's credibility determination even though one reason may have been in error).  Lastly, if an ALJ's credibility finding is supported by substantial evidence, the court "may not engage in second-guessing."  *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).  There is significant and substantial evidence in support of ALJ Berry's findings here.  Thus, this Court cannot engage in second guessing.  Accordingly, the ALJ did not arbitrarily discredit claimant's testimony and the findings are free of legal error.

1  ***The ALJ's RFC Determination***

2      Plaintiff complains the ALJ's RFC finding and the hypothetical questions posed to the

3  VE are "fatally flawed" because both fail to include all of Plaintiff's limitations.  (Doc. 16 at 25-

4  26.)  The Commissioner argues no error occurred.  (Doc. 20 at 13-14.)

5      Initially, in light of this Court's findings above - that no error occurred at step two of the

6  sequential analysis and that the ALJ did not in fact disregard limitations identified by Dr.

7  Spindell with regard to borderline intellectual functioning - Plaintiff's argument as to that

8  particular issue is foreclosed and need not be addressed.

9      Plaintiff also argues that ALJ Berry erred by failing to include any manipulative

10  limitation in light of his finding that she had the severe impairment of carpel tunnel syndrome.

11  (Doc. 16 at 25.)  Defendant contends that such findings were not required.  (Doc. 20 at 13.)

12      RFC is an assessment of an individual's ability to do sustained work-related physical and

13  mental activities in a work setting on a regular and continuing basis of eight hours a day, for five

14  days a week, or equivalent work schedule.  SSR 96-8p.  The RFC assessment considers only

15  functional limitations and restrictions which result from an individual's medically determinable

16  impairment or combination of impairments.  SSR 96-8p.  "In determining a claimant's RFC, an

17  ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay

18  evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a

19  medically determinable impairment.'"  *Robbins v. Social Security Admin.*, 466 F.3d 880, 883

20  (9th Cir. 2006).  In assessing a claimant's RFC, the ALJ may rely upon the state agency

21  physician's findings as to claimant's ability.  20 C.F.R. §§ 404.1513(c), 404.1527(f)(2)(i),

22  416.913(c), 416.927(f)(2)(I).

23      Here, prior to November 2004, the record establishes that Plaintiff's carpal tunnel

24  syndrome was mild.  X-rays were negative, and treatment involved splints and Ibuprofen.  AR

25  35.  In a June 8, 2001, physical RFC assessment, Ernest Wong, M.D., state agency physician,

26  determined that Plaintiff had no manipulative limitations.  AR 492.  Dr. Wong also proffered his

27  opinion regarding Plaintiff's exertional, postural, visual, communicative, and environmental

28  limitations - none.  AR 489-496.  The ALJ was permitted to rely upon Dr. Wong's findings.  20

1  C.F.R. §§ 404.1513(c), 404.1527(f)(2)(i), 416.913(c), 416.927(f)(2)(I).  Morever, an ALJ is only

2  required to present the VE with those limitations he finds to be credible and supported by the

3  evidence.  *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001).  ALJ Berry was not

4  required to incorporate manipulative limitations because he did not find the limitation to be

5  credible or supported by the evidence.

6       In sum, ALJ Berry's RFC determination is supported by substantial evidence and is free

7  of legal error.

8       ***The ALJ's Duty to Develop the Record Regarding Illiteracy***

9       Plaintiff further argues that the ALJ failed to fully develop the record regarding her

10 illiteracy.  Defendant contends that there was no evidence that Plaintiff was illiterate, and

11 consequently  there was no duty to develop the record further on this issue.

12      "'In Social Security cases, the ALJ has a special duty to fully and fairly develop the

13 record and to assure that the claimant's interests are considered.'" *Smolen v. Chater*, 80 F.3d at

14 1288 (citation omitted).  This duty exists regardless of whether the claimant is represented by

15 counsel. *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003); *Tonapetyan v. Halter*, 242 F.3d

16 1144, 1150 (9th Cir. 2001).

17      Plaintiff argues that the record is ambiguous and incomplete because ALJ Birge

18 represented she was "going to do a psychological CE then get an IQ and a reading level."

19 Plaintiff contends that because ALJ Birge failed to do so, her right to a full and fair hearing was

20 prejudiced because the current ALJ did not develop the literacy issue.  (Doc. 21 at 17).

21      While the ALJ has a the duty to develop the record, this duty is triggered only if the

22 evidence is ambiguous or the record is inadequate. *Mayes v. Massanari*, 276 F.3d 453, 459-460

23 (9th Cir. 2001) ("An ALJ's duty to develop the record further is triggered only when there is

24 ambiguous evidence or when the record is inadequate to allow for proper evaluation of the

25 evidence").  Moreover, it is the Plaintiff's duty to prove that he or she is disabled. *Mayes*, 276

26 F.3d at 459; 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a

27 disability unless he furnishes such medical and other evidence of the existence thereof as the

28 Secretary may require").

1    In this case, Plaintiff argues that ALJ Berry erred by not ordering further testing

2  regarding illiteracy.  This is problematic for several reasons.  First, there have been several

3  hearings since ALJ Birge's decision, including proceedings before ALJ Ross and ALJ Berry.  AR

4  749-793.  Although Plaintiff mentioned that she cannot read or write "that well" while testifying

5  before ALJ Ross in 2005, she indicated that she was mainly "just having health problems."  AR

6  753-754.  Furthermore, there is no indication that this issue was raised during the hearing before

7  ALJ Berry in 2007.  AR 771-793.  If Plaintiff's literacy was an issue, Plaintiff's counsel could

8  have, and should have, raised it during the most recent administrative proceeding.  There is no

9  indication that Plaintiff's attorney did so, nor did he move to reopen or supplement the record.

10  In fact, after ALJ Berry questioned Plaintiff, her attorney indicated the he had *no* questions.  AR

11  787.

12    Second, as noted in this decision, in the past, Plaintiff testified that she read, did puzzles,

13  drove a car, and used public transportation.  AR 36.  These activities are inconsistent with

14  counsel's representations that Plaintiff is illiterate.  Third, while there is no explicit literacy

15  assessment in Dr. Spindell's 2002 report, after performing a full mental status examination and

16  an IQ examination, Dr. Spindell felt the claimant had the requisite cognitive skills to work in the

17  labor market as long as her medical conditions would permit her to do so.  AR 526-528.  As

18  previously explained, Dr. Spindell's findings assessed Plaintiff's mental capacities, and there is

19  no indication that Dr. Spindell had any concerns related to Plaintiff's literacy.

20    Finally, while Plaintiff's counsel makes broad assertions that illiteracy is an issue, she has

21  not identified any evidence in the record or submitted any evidence to support this assertion.

22  Similarly, she has not indicated that this limitation prevented Plaintiff from performing her past

23  relevant work as a fast food worker prior to November 18, 2004.  Plaintiff clearly performed this

24  work at Taco Bell in 1995 despite her alleged illiteracy, further undermining her argument that

25  the ALJ had a duty to develop the record regarding this issue.  AR 785-786.  Accordingly,

26  Plaintiff's argument is rejected.

27

28

1    ***Determination of the Date of Onset of Disability***

2          Finally, Plaintiff argues the ALJ's disability onset date finding contravenes SSR 83-20.

3    More specifically, Plaintiff contends the proper onset date is November 22, 2000.  (Doc. 16 at

4    27-28.)  The Commissioner counters that the ALJ did not err as the November 18, 2004, date is

5    proper.  (Doc. 20 at 14-15.)

6          As a general matter, SSR 83-20 sets forth guidelines for determining the onset date of

7    disability.  It directs that the judgment regarding the onset date of disability must have a

8    legitimate medical basis.  SSR 83-20.  Although Plaintiff argues that her heart condition did not

9    appear overnight, the ALJ determined that her heart attack was the event that rendered her

10   disabled.[9]  SSR 83-20 in relevant section provides as follows:

11           For disabilities of traumatic origin, onset is the day of the injury if the individual
             is thereafter expected to die as a result or is expected to be unable to engage in
12           substantial gainful activity (SGA) for a continuous period of at least 12 months.
             The fact that claimant worked on the day of onset is not relevant, irrespective of
13           the hours worked and the money earned.

14   SSR-20 (citations omitted).  In this instance, the medical evidence is instructive.  Plaintiff

15   suffered a heart attack on November 18 2004.  AR 599.  Plaintiff argues that because the ALJ

16   found that she had a severe impairment of coronary artery disease since November 22, 2000 (the

17   alleged date of onset), the ALJ improperly calculated the onset of disability date.  (Doc. 21 at 18.)

18   This conclusion ignores the ALJ's finding that prior to November 18, 2004, Plaintiff had the

19   RFC to perform her past relevant work.  AR 37.  This Court has determined that the ALJ did not

20   err in this regard.

21         The Ninth Circuit has interpreted SSR 83-20 to mean that "[i]n the event that the medical

22   evidence is not definite concerning the onset date and medical inferences need to be made, SSR

23   83-20 requires the [ALJ] to call upon the services of a medical advisor and to obtain all evidence

24   which is available to make the determination."  *Sam v. Astrue,* 550 F.3d 808, 810 (9th Cir. 2008);

25   *DeLorme v. Sullivan*, 924 F.2d 841, 848 (9th Cir. 1991).

26

27   ──────────────

28         [9] As previously noted in this opinion, Plaintiff has been applying for disability benefits since at least 1998
     and was denied on three prior occasions. *See* Facts and Prior Proceedings, *infra*.

                                              23

1    Here, the ALJ relied on a medical advisor's opinion - a report from Plaintiff's own

2    treating cardiologist, Dr. Wessel, who indicated Plaintiff suffered from her limitations beginning

3    November 2004.  AR 37, 593.  The Court finds Plaintiff's arguments regarding her interpretation

4    of Dr. Wessel's report unavailing.  The law is clear that a treating physician's report shall be

5    given deference. *Winans v. Bowen*, 853 F.2d at 647.

6    Finally, although Plaintiff argues that the alleged onset date proposed by the individual

7    should be used because there is a presumption in favor of the claimant, this presumption is

8    recognized in claimants suffering from disabilities of a nontraumatic origin.  That is not the case

9    here.  In any event, regardless of whether the event is classified as traumatic or nontraumatic,

10   SSR 83-20 clearly provides that "the established onset date must be fixed based on the facts and

11   can never be inconsistent with the medical evidence of record."  SSR 83-20.  In this case, in

12   addition to the medical record, Plaintiff's own testimony describing her symptoms indicates that

13   she started noticing "things" in 2003 but she "ignored it" and took only one blood pressure pill.

14   AR 777-778.  It was not until 2004 when she thought she was having gas pains that the doctor

15   told her she was having a heart attack.  AR 778.  Here, the ALJ's calculation of the date of

16   disability is supported by substantial evidence and is therefore proper.[10]

17   //

18   //

19   //

20   //

21   //

22   //

23   //

24   //

25   ─────────────

26   [10]  Plaintiff's counsel is advised that this Court has noticed that she appears to raise the same boilerplate
     arguments in numerous cases.  Facts are often referenced which relate to other cases and are not relevant to the case

27   at hand.  In addition, her reply briefs are often more lengthy than the opening briefs.  The Court questions whether
     Plaintiff's counsel is appropriately screening her cases, and whether she is meeting her obligations under Rule 11 of

28   the Federal Rules of Civil Procedure.

1

## CONCLUSION

2      Based on the foregoing, the Court finds that the ALJ's decision is supported by

3   substantial evidence in the record as a whole and is based on proper legal standards.

4   Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the

5   Commissioner of Social Security.  The clerk of this Court is DIRECTED to enter judgment in

6   favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff,

7   Minnie Moore.

8

9      IT IS SO ORDERED.

10   **Dated:    March 30, 2011**              _____/s/ **Gary S. Austin**_____
                                              UNITED STATES MAGISTRATE JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28